In the Matter of Harold MORRISON, Trustee of Atlas Concrete Pipe, Inc., and/or Atlas Concrete Conduit, Inc., Plaintiff and Counter-Defendant, Appellee,

v.

ROCCO FERRERA & CO., a Michigan Corporation, Defendant and Counter-Plaintiff, Appellant.

No. 76–1165.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1977.

Decided May 6, 1977.

William R. Brashear, Brashear, Brashear & Duggan, Livonia, Mich., for appellant.

Robert L. Segar, Leitson, Dean, Dean, Segar & Hart, P. C., Flint, Mich., for appellee.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and SILER, District Judge.*

* Honorable Eugene E. Siler, Jr., Judge, United States District Court for the

PHILLIPS, Chief Judge.

The trustee in a Chapter X reorganization proceeding under the bankruptcy act filed an action in the United States District Court to recover an account receivable. The District Court referred the matter to a bankruptcy judge. The defendant thereupon filed an answer and counterclaim for breach of contract. Thereafter the Chapter X proceeding was terminated and the Chapter X petitioner was adjudged a bankrupt. The question presented on this appeal is whether the bankruptcy judge has continuing jurisdiction over the original action.

In an opinion reported as *Morrison v. Rocco Ferrera & Co., Inc.*, 409 F.Supp. 1364 (E.D.Mich.1975), District Judge James Harvey answered this question in the affirmative. We affirm.

## I.

On February 22, 1974, Atlas Concrete Pipe, Inc. (Atlas), plaintiff-appellee, filed an action in the State courts of Michigan against Rocco Ferrera & Co., Inc. (Rocco), defendant-appellant, to recover accounts receivable allegedly owed to Atlas in the amount of $110,608.87. This State court action did not proceed to trial.

On March 15, 1974, Atlas filed a petition for reorganization under Chapter X of the bankruptcy act, 11 U.S.C. § 501 *et seq.*, in the United States District Court for the Eastern District of Michigan. By order dated April 18, 1974, the District Court approved Atlas' Chapter X petition and appointed Harold Morrison reorganization trustee. The approval of the Chapter X petition was followed on June 28, 1974, with an order of the District Court regarding the accounts receivable that were the subject of the Michigan State court action between Atlas and Rocco. This order of June 28, signed by Senior District Judge Thomas P. Thornton during the illness of the late District Judge Stephen J. Roth, referred the entire accounts receivable matter to a bank-

Eastern and Western Districts of Kentucky, sitting by designation.

ruptcy judge, Harold H. Bobier, in the following terms:

Trustee herein having issued show cause to the existing accounts receivable of the debtors, Atlas Concrete Pipe, Inc. and/or Atlas Concrete Conduit, Inc. and hearing having been heard before this Court; and it appearing to this Court that many matters are seriously contested and that it will be necessary that these matters in dispute be referred to a tribunal of competent jurisdiction, NOW, THEREFORE,

IT IS HEREBY ORDERED that the Trustee be directed to issue the necessary pleadings required to initiate proceedings against the accounts receivable which are in dispute and that said matters in dispute be referred to the Honorable Harold H. Bobier, Judge in Bankruptcy, Federal Building, Flint, Michigan.

IT IS FURTHER ORDERED that the Honorable Harold H. Bobier shall take what action is necessary to resolve said accounts receivable either through settlement and/or whatever litigation is necessary.

On September 9, 1974, Harold Morrison, trustee under Chapter X for the estate of Atlas Concrete, filed a complaint in the United States District Court for the Eastern District of Michigan against Rocco for recovery of the indebtedness allegedly due and represented by the accounts receivable. This complaint stated that the suit was a "suit of a civil nature" and that jurisdiction "has been vested in the Federal District Court" incident to the Chapter X reorganization pending in that court. On November 12, 1974, District Judge Cornelia G. Kennedy, noting that "numerous creditors have appeared . . . and various actions are pending" in the Atlas Concrete Chapter X proceeding in the District Court, ordered the entire Atlas reorganization referred to Bankruptcy Judge Bobier, excepting such duties as are "reserved by statute exclusively to the District Judge . . . ."

On November 13, 1974, one day after District Judge Kennedy's general order of reference to Bankruptcy Judge Bobier, and more than four months after Judge Thornton's limited reference of the accounts receivable matter to Bankruptcy Judge Bobier, Rocco filed an answer in the District Court to the complaint filed by trustee Morrison. Rocco's answer set forth a general denial of the claims against it and then stated as follows:

1. Defendant admits that Plaintiff agreed to sell and deliver to Defendant certain inventory and merchandise prior to January 23, 1974 as set forth in Paragraph Four (4) of Plaintiff's Complaint, and Defendant further admits that certain inventory and merchandise were furnished Defendant but Defendant alleges that Plaintiff did not fulfill the terms of the agreement to furnish said inventory and/or merchandise in that Plaintiff did not furnish the materials agreed upon nor was said merchandise and/or inventory furnished when and in the manner agreed upon.

2. That as a result of Plaintiff's failure to fulfill the terms of the agreement as set forth above, Defendant suffered damages for which Plaintiff is indebted to Defendant which damages resulting from said breach of the agreement and failure of the Plaintiff to perform as agreed amount to Fifteen Thousand ($15,000.00) Dollars.

Rocco's answer went on to state a counterclaim for damages for breach of contract against Atlas in a total amount of $293,000 plus interest, costs and attorneys fees. There was no denial or challenge of any kind in Rocco's answer to the jurisdiction of the District Court or of the bankruptcy judge sitting by reference from the District Court.

Atlas was unable to reverse its deteriorating financial condition during the Chapter X proceedings. By December 1974 it became clear to the District Court that the Chapter X proceeding should be terminated, followed by straight bankruptcy and liquidation. The District Court conducted a show cause hearing on February 11, 1975, and on February 27 District Judges Thornton and Philip Pratt issued a joint order of

adjudication and referral terminating the Chapter X proceeding, adjudicating Atlas a bankrupt, and further stating as follows (as amended by order of Judge Pratt dated March 12, 1975):

IT IS FURTHER ORDERED that this matter be referred to the Bankruptcy Court, Eastern District, Northern Division, before the Honorable Harold H. Bobier, Judge in Bankruptcy, for further proceedings under and consistent with the Bankruptcy Act.

IT IS FURTHER ORDERED that the Honorable Harold H. Bobier proceed immediately with the orderly liquidation of all assets, the collection of accounts receivable and whatever determinations are necessary so far as the rights of all parties hereto and the equities that exist in the course of said liquidation and/or such other actions as are authorized under the Bankruptcy Act.

On March 11, 1975, Rocco filed a motion to dismiss the complaint filed against it by Atlas and Harold Morrison, the reorganization trustee, on the ground that the court lacked jurisdiction over the controversy. In support of its motion, Rocco argued that the trustee appointed under the Chapter X proceedings is no longer a party in interest and the action does not lie in the U.S. District Court because there is no longer a pending Chapter X proceeding in the District Court. Rocco further stated in its motion that the debtor, Atlas, has been adjudicated a bankrupt and thus, under the provisions of § 23(b)[1] of the bankruptcy act the trustee for Atlas was required to prosecute the underlying claim on the accounts receivable in the courts "where the Bankrupt might have brought or prosecuted them, which in this case would be the appropriate State court of the State of Michigan."

On March 17, 1975, Bankruptcy Judge Harold H. Bobier ordered the appointment of David Cuvrell as receiver in bankruptcy for the estate of Atlas Concrete Pipe, Inc. On April 8, District Judge James Harvey entered an order authorizing Harold Morrison to resign as trustee for Atlas in the terminated Chapter X reorganization proceeding.

On May 6, 1975, Rocco's motion to dismiss the District Court complaint filed against it by trustee Morrison and Atlas came on for hearing before Bankruptcy Judge Bobier, who ruled from the bench that he had jurisdiction to resolve the accounts receivable matter pursuant to the general referral to him by the District Court.

Rocco appealed the finding of jurisdiction by the bankruptcy judge to the District Court. On November 17, 1975, District Judge Harvey affirmed the determination of Bankruptcy Judge Bobier in the opinion reported at 409 F.Supp. 1364. Rocco has appealed to this court.

## II.

The jurisdictional issue on this appeal is composed of these three questions:

(1) Did the United States District Court sitting as a reorganization court under Chapter X of the bankruptcy act have jurisdiction over the action filed by Atlas to recover accounts receivable allegedly owed by Rocco to Atlas?

(2) Did Bankruptcy Judge Bobier acquire jurisdiction to determine the controversy between Atlas and Rocco by virtue of the

---

1. Section 23 of the Bankruptcy Act, 11 U.S.C. § 46, provides as follows:

 *§ 23. Jurisdiction of United States and State Courts.*
 a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.
 b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act.

reference from the District Court or as a result of any action or inaction by the parties?

(3) After the termination of the Chapter X proceeding and the appointment of a new trustee for the debtor, did the District Court or the bankruptcy judge sitting by reference from the District Court have jurisdiction to continue with the resolution of the controversy between Atlas and Rocco?

(A) Jurisdiction of the District Court

■ The original Chapter X petition was filed by Atlas in the District Court on March 15, 1974. It appears to this court to be beyond dispute that, from and after the approval of the Chapter X petition by the reorganization court (i. e., the District Court sitting as a reorganization court under Chapter X), the District Court had jurisdiction to adjudicate the account receivable action between Atlas and Rocco. Section 2a(7)[2] of the bankruptcy act, incorporated into Chapter X via § 114,[3] and not limited by the provisions of § 23(b)[4] because of the language of § 102[5] gave the District Court sitting as a reorganization court jurisdiction over the subject matter of the suit begun in the District Court by Atlas. The Supreme Court has so held. *See Williams v. Austrian*, 331 U.S. 642, 67

S.Ct. 1443, 91 L.Ed. 1718 (1947). *See also In Re Cuyahoga Finance Co.*, 136 F.2d 18 (6th Cir. 1943).

The District Court, however, referred the accounts receivable matter to Bankruptcy Judge Bobier by specific orders dated June 28, 1974, and in the general reference of the Chapter X to Judge Bobier dated November 12, 1974. Thus at the time of the filing of Rocco's answer to the accounts receivable complaint on November 13, 1974, the matter was actually pending by reference before Bankruptcy Judge Bobier.

(B) Jurisdiction after Reference by Reorganization Court to Bankruptcy Judge

Section 117 of the bankruptcy act gives the District Court sitting as a reorganization court under Chapter X broad powers to refer parts or all of the reorganization proceedings to a referee in bankruptcy:

Sec. 117. The judge may, at any stage of a proceeding under this chapter, refer the proceeding to a referee in bankruptcy to hear and determine any and all matters not reserved to the judge by the provisions of this chapter, or to a referee as special master to hear and report generally or upon specified matters. Only under special circumstances shall refer-

**2.** Section 2a(7) of the bankruptcy act grants to "courts of bankruptcy" [which includes by definition under § 1(10) of the Act United States district courts] such jurisdiction at law and equity as will enable them to "Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided, . . . ."

**3.** Section 114 of the bankruptcy act incorporates the general grant of jurisdiction contained in § 2a(7) into the framework of reorganization under Chapter X, to the extent that this incorporation is not inconsistent with the separate provisions of Chapter X:

Sec. 114. Upon the approval of a petition, the jurisdiction, powers, and duties of the court and of its officers, where not inconsistent with the provisions of this chapter, shall be the same as in a bankruptcy proceeding upon adjudication.

**4.** Section 23, quoted in n. 1, is the key exception to federal court jurisdiction acknowledged in the "except as herein otherwise provided" language of § 2a(7). In straight bankruptcy proceedings, § 23 is of much significance in determining the proper forum for actions by trustees and receivers. *See* 2 Collier ¶ 23.01 *et seq.* (14th ed.). Section 23 is not applicable to Chapter X proceedings, *See* n. 5, *infra.*

**5.** Section 102 reads in part:

Sec. 102. The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: *Provided, however,* That section 23, subsections h and n of section 57, section 64, and subdivision f of section 70, shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of chapters I to VII, inclusive.

ences be made to a special master who is not a referee. The appointment of a receiver in a proceeding under this chapter shall be by the judge.

Section 38 of the bankruptcy act, applicable in Chapter X proceedings because of the operation of § 114 (see n. 3), defines the jurisdiction of referees as follows:

§ 38. *Jurisdiction of Referees.* Referees are hereby invested, subject always to a review by the judge, with jurisdiction to . . .

. . . . .

(6) perform such of the duties as are by this Act conferred on courts of bankruptcy, including those incidental to ancillary jurisdiction, and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided·

. . . . .

The Eastern District of Michigan, by local bankruptcy rule, has authorized the bankruptcy judges of the District to exercise the full breadth of jurisdiction permissible under the bankruptcy act. Local bankruptcy rule 3, a proposed rule at the time of the litigation herein, and effective as of November 3, 1975, reads as follows:

### RULE 3

#### Referees—General Jurisdiction

The Bankruptcy Judges of this District shall have concurrent jurisdiction in all divisions of this district; and they and each of them are hereby empowered and authorized to do all acts, conduct all proceedings, render all judgments and orders and perform all duties as prescribed by the Bankruptcy Act, the Rules of Bankruptcy Procedure these rules or the rules of the United States District Court applicable in a civil action.

It thus appears that if the accounts receivable action between Atlas and Rocco was part of the "proceeding" as that term is used in § 117, and if the action was not "reserved to the judge," it was within the power of the District Court sitting as a

reorganization court to refer it to Bankruptcy Judge Bobier, and thereafter it was within the jurisdiction of the bankruptcy judge to adjudicate the matter. We find no express provision of Chapter X reserving the resolution of the action herein to the judge of the District Court. We also conclude that this action was a "proceeding" which could be referred to a bankruptcy judge.

■ There has long been a distinction in straight bankruptcy between the "summary" jurisdiction of the bankruptcy court and the bankruptcy referee over "proceedings in bankruptcy," and the "plenary" jurisdiction of the United States District Courts and State courts over "independent suits." *See Weidhorn v. Levy,* 253 U.S. 268, 40 S.Ct. 534, 64 L.Ed. 898 (1920). The summary-plenary distinction is used confusingly in bankruptcy decisions, sometimes to delineate jurisdiction in the sense of power to adjudicate conferred by statute, other times to define procedural rights, and, on occasion, to refer to both of these senses simultaneously. *See, e. g., Harris v. Brundage Co.,* 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100 (1938); *MacDonald v. Plymouth Trust Co.,* 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093 (1932)· *Taubel, Etc., Co. v. Fox,* 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924); *Weidhorn v. Levy, supra,* 253 U.S. 268, 40 S.Ct. 534, 64 L.Ed. 898; *Duda v. Sterling Mfg. Co.,* 178 F.2d 428 (8th Cir. 1949); *Warder v. Brady,* 115 F.2d 89 (4th Cir. 1940).

■ Where an action is characterized as a proceeding within the summary jurisdiction of the bankruptcy court, it is generally said that the action can be referred to the bankruptcy referee for adjudication. 2A Collier ¶ 38.09[2] (14th ed.). Where, however, an independent or plenary action must be maintained, reference of such an action to the bankruptcy judge raises substantial jurisdictional problems. This is apparently true in straight bankruptcy even where it is clear that there is jurisdiction in the bankruptcy court (the District Court sitting in bankruptcy) to hear and determine the matter. Collier explains:

Although §§ 60b, 67c and 70e(3) specifically grant concurrent jurisdiction to any "bankruptcy court," it is well settled that the referee does not, without the parties' consent, have jurisdiction over a plenary suit instituted under §§ 60, 67 or 70, even though the district court has such jurisdiction. Various reasons for this rule have been stated. It has been said that the machinery of the referee's court is not adapted to the formal procedure necessary for a plenary action; and it has been asserted that although for many purposes the referee has the powers of a court of bankruptcy, it was not the intent of Congress to confer upon referees the special power given the district courts to hear such plenary suits. In *Weidhorn v. Levy*, the court stressed the importance of General Order 12(1), and pointed out that the word "proceedings" therein could not be taken to mean independent plenary actions. Whatever the basis, the rule is firmly entrenched, and regardless of the general position of the referee as a court of bankruptcy under the Act, the Rules or local rules conferring such power, the referee's jurisdiction is summary only. He cannot, therefore, hear and determine the issues in a suit by the receiver or trustee where the defendant is entitled to a plenary form of action and has not consented to the referee's exercise of summary jurisdiction.

2 Collier ¶ 23.15[7] (14th ed.). (Footnotes omitted.)

■ The rule in straight bankruptcy that a bankruptcy court or bankruptcy referee cannot exercise summary jurisdiction over a controversy where the defendant is entitled to a plenary proceeding and there is timely objection to the exercise of summary jurisdiction has been discussed in this Circuit in the context of reorganization under Chapter X. *See In Re Mt. Forest Fur Farms of America*, 122 F.2d 232 (6th Cir. 1941), *cert. denied,* 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561 (1942), *rehearing denied,* 315 U.S. 826, 62 S.Ct. 623, 86 L.Ed. 1222 (1942). *See also In Re International Leasing Corporation*, 391 F.2d 572 (6th Cir. 1968). *But see In Re Cuyahoga Finance*

*Co.,* 136 F.2d 18 (6th Cir. 1943). It has been held in this Court that after a broad reference to a referee by a District Court sitting in reorganization under Chapter X, the referee exercises powers similar to those possessed by a referee in straight bankruptcy. *In Re D.I.A. Sales Corporation*, 339 F.2d 175 (6th Cir. 1964).

■ We conclude that under the facts of the present case, whether the Atlas-Rocco action be characterized as summary or plenary, it was a "proceeding" as that term is used in § 117, and as such it could be referred by the reorganization court to the bankruptcy judge. Compare *Weidhorn, supra,* 253 U.S. 273, 40 S.Ct. 534, with *Williams, supra,* 331 U.S. at 658, n. 42, 67 S.Ct. 1443.

■ If we characterize the *Atlas-Rocco* matter as being within the summary jurisdiction of the reorganization court, which would be to say that this controversy regards property in the actual or constructive possession of the reorganization court (*See Willyerd v. Buildex Company,* 463 F.2d 996 (6th Cir. 1972)), then it was clearly within the ordinary summary powers of Bankruptcy Judge Bobier after the reference to him. If we were to determine that Rocco's claim was adverse, not merely colorable, and thus that Rocco was entitled to plenary proceedings, the burden was on Rocco at the time of the reference of the matter to Judge Bobier to object to the power or to the nature of the proceedings before the bankruptcy judge. 6 Collier ¶ 3.06 (14th ed.). Rocco did not object to jurisdiction before Bankruptcy Judge Bobier during the Chapter X proceedings. In fact, on November 13, 1974, Rocco filed an answer to Atlas' complaint and asserted an affirmative counterclaim of its own against Atlas. Rocco will not now be heard to complain that the bankruptcy judge was without jurisdiction to entertain the controversy pursuant to the reference from the District Court sitting as a reorganization court.

■ Rocco's argument that it was compelled to answer the Atlas complaint so as to avoid default is without merit. Rocco

had the alternative of filing a challenge to jurisdiction before the bankruptcy judge rather than filing its answer and counterclaim. Rocco's further contention that it had no knowledge of the Chapter X proceeding and thus was not on notice that there were orders of reference and the like is also difficult to understand in light of the recitals in the complaint filed against it by Atlas in September 1974, which stated:

1. Plaintiff, HAROLD MORRISON, is the Trustee under Chapter X of the Bankruptcy Act in the estate of Atlas Concrete Pipe, Inc., a corporation incorporated under the laws of the State of Michigan and/or Atlas Concrete Conduit, Inc., a corporation incorporated under the laws of the State of Michigan, having their principal places of business in Flint, Michigan; said Trustee being a Trustee in Bankruptcy under the provisions of Article 10 in the United States District Court for the Eastern District of Michigan, Southern Division, in cause number 74–60655.

### (C) Jurisdiction after Termination of Chapter X and Appointment of Receiver in Bankruptcy

Given the conclusion that Bankruptcy Judge Bobier acquired jurisdiction over the Atlas-Rocco controversy pursuant to the reference from the reorganization court and the failure of Rocco to timely object, did the bankruptcy court lose jurisdiction over the controversy when Atlas moved out of Chapter X into straight bankruptcy and a receiver replaced the Chapter X trustee?

Rocco contends that when Atlas passed into straight bankruptcy, the jurisdictional provisions of § 23 [6] of the bankruptcy act became immediately effective to oust the bankruptcy court of jurisdiction. Section 102 of the act, quoted in part in note 5 above, appears to deal with the situation herein. Section 102 reads in full:

Sec. 102. The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: *Provided, however,* That *section 23,* subdivisions h and n of section 57, section 64, and subdivision f of section 70, *shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of chapters I to VII, inclusive.* For the purposes of such application, provisions relating to "bankrupts" shall be deemed to relate also to "debtors", and "bankruptcy proceedings" or "proceedings in bankruptcy" shall be deemed to include proceedings under this chapter. For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 128 of this Act, and the date of adjudication shall be taken to be the date of approval of a petition filed under section 127 or 128 of this Act except where an adjudication had previously been entered. (Emphasis added.)

Also pertinent is § 238 of the bankruptcy act which provides in part:

Sec. 238.

(a) Upon the entry of an order directing that bankruptcy be proceeded with—

(1) where the petition was filed under section 127 of this Act, the bankruptcy proceeding shall be deemed reinstated and shall thereafter be conducted, so far as possible, as if the petition under this chapter had not been filed; or where the petition was filed under section 128 of this Act, *the proceeding shall thereafter be conducted so far as possible, in the same manner and with like effect as if an involuntary petition for adjudication had been filed at the time when the petition under this chapter was filed,* and a decree of adjudication had been entered at the time when the petition under this chapter was approved; . . . (Emphasis added.)

 This court and other courts have had occasion to acknowledge that the statutory scheme for transition from Chapter X

---

**6.** See n. 1, *supra.*

to straight bankruptcy provides for a continuous and unitary proceeding. *See In Re Manufacturers Trading Corp.*, 194 F.2d 961 (6th Cir. 1952); *In Re Wil-low Cafeterias*, 111 F.2d 83 (2d Cir. 1940); 6A Collier ¶ 12.05[3] (14th ed.). As this court noted in *Hercules Service Parts Corp. v. United States*, 202 F.2d 938, 941 (6th Cir. 1953), despite the termination of Chapter X proceedings and an order of adjudication in bankruptcy, there is no break in the relationship between the court, the parties and the debtor's estate from the time of the Chapter X petition. Although the substantive provisions regarding such things as what claims are provable may change after the transition (*see, e. g., Valdes v. Feliciano*, 267 F.2d 91 (1st Cir. 1959)), it would be anomalous to hold that, in spite of clear Congressional provision for a streamlined transition of Chapter X proceedings into straight bankruptcy, all proceedings commenced (and, possibly, all judgments rendered) under Chapter X jurisdiction may be avoided if reorganization fails and independent jurisdiction in straight bankruptcy is not present. A more reasonable interpretation of the statutory scheme is that jurisdiction over parties and proceedings acquired during Chapter X continues through the transition into straight bankruptcy, though after an order of adjudication, no new claim of jurisdiction based on uniquely Chapter X provisions would be appropriate, and though the substantive rights and liabilities of the parties may well change at the time of transition.

It is the conclusion of this court that the jurisdiction acquired during Chapter X over the controversy between Atlas and Rocco continued through the transition by Atlas from Chapter X into straight bankruptcy. This jurisdiction was originally vested in the District Court sitting as a reorganization court. Jurisdiction passed to Bankruptcy Judge Bobier pursuant to the references of Judge Thornton and Judge Kennedy and the failure of Rocco to object to jurisdiction prior to filing its answer and counterclaim. Bankruptcy Judge Bobier was not ousted of jurisdiction to adjudicate this matter as a result of the transition from Chapter X to straight bankruptcy.

We have considered Rocco's argument that the bankruptcy court was without jurisdiction as a result of the dismissal of Harold Morrison as Chapter X trustee and the appointment of David Cuvrell as receiver in bankruptcy, and we find this argument to be without merit for the reasons stated by Judge Harvey in his reported opinion.

Accordingly, the findings of the District Court that the bankruptcy court has jurisdiction over the controversy herein is affirmed and the case is remanded for further proceedings.

The costs of this appeal are taxed against appellant.